IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 3, 2005

## STATE OF TENNESSEE v. DEREK BATES

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-00492     Bernie Weinman, Judge**

---

**No. W2004-01623-CCA-R3-CD - Filed June 9, 2005**

---

The Defendant, Derek Bates, was convicted by a jury of two counts of aggravated robbery, which the trial court subsequently merged into a single conviction. The trial court sentenced the Defendant as a Range I, standard offender to nine years in the Department of Correction. In this direct appeal, the Defendant challenges the sufficiency of the evidence and the constitutionality of his sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Derek Bates, pro se (at trial); and W. Mark Ward, Assistant Shelby County Public Defender, Memphis, Tennessee, for the appellant, Derek Bates.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jim Lammey, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

David Campbell testified that, in March 2003, he lived in the Raleigh Woods Apartment complex in Memphis, Tennessee. He frequently saw the Defendant in the complex and knew the Defendant as "Chris." Mr. Campbell stated that, on March 17, 2003, the Defendant approached him for a ride, offering him $5 cash for gas. Mr. Campbell testified, "I took [the Defendant] . . . to Citgo and Mapco. He claimed to have a sister broke down somewhere and she needed help getting out of the road." Mr. Campbell stated that, at the time, the Defendant was wearing a gray or blue hooded sweatshirt.

At the Defendant's direction, Mr. Campbell first drove the Defendant to a location where the Defendant said he needed to collect some money from a partner. This location was near a Citgo store. Mr. Campbell parked and waited just a few minutes before the Defendant returned. The Defendant then directed Mr. Campbell to a Mapco. Upon their arrival, the Defendant stated that he did not see his sister, so they drove to a nearby Amoco station. When the Defendant again did not see his sister, they returned to the Mapco. Mr. Campbell parked his car and the Defendant went into the Mapco store. Mr. Campbell testified:

> [The Defendant] went in and he come back out a few minutes later, laughing, skipping like there wasn't anything wrong. And, he told me that he had [seen] his ex-girlfriend in there and exposed [him] self to her and she was calling the police.
> We went to pull out of the parking lot. As we [were] pulling out of the parking lot he pulled his hooded sweatshirt off and his gun fell out. He held it and he said, just don't say nothing. I took him back to where . . . I picked him up at.

Mr. Campbell, realizing that something was wrong, returned to the Mapco station after dropping off the Defendant. There he found a number of police officers and learned that the store had been robbed. He told the police that the perpetrator's name was "Chris" and showed them where "Chris" stayed in the apartment complex. Mr. Campbell stated that the police went into this apartment but did not find anything.

Over the course of the next several months, Mr. Campbell viewed photographs of possible suspects four or five times. In August, Memphis Police Sergeant James Grigsby showed him a single photograph of a man named Chris Johnson. Mr. Campbell told Sgt. Grigsby that the man looked like the Chris to whom he had given the ride, but he was not sure. Subsequently, Sgt. Grigsby showed him a photo array of six men, one of whom was the Defendant. This time, Mr. Campbell identified the Defendant as the man he knew as "Chris" and was positive of this identification. Mr. Campbell also identified the Defendant at trial as the man he knew as "Chris" and whom he had driven to Mapco.

Towanna Hayes testified that she was working alone at the Mapco store in question on March 17, 2003. At about noon, she testified,

> The [D]efendant came in the back door and approached the counter asking for change for a dollar. I proceeded to give him change for a dollar when he pulled out a handgun and told me to hold it and proceeded to take the whole [cash register] drawer out. A customer walked in the back door while the robbery was taking place. He told me and the customer to get down. We proceeded to get down and the [D]efendant ran out the back door.

As soon as the Defendant left, Ms. Hayes called the police. The Defendant stole approximately $75 from the cash register drawer.

Ms. Hayes identified the Defendant at trial as the man who committed the robbery. She had never seen the Defendant before that time. The robbery was videotaped by the store's surveillance camera, and the videotape was played for the jury.

Ms. Hayes testified that she was fired from her employment with Mapco two days after the robbery. She heard nothing more about the incident until September when Sergeant James Grigsby approached her with a photo array of six persons, one of whom was the Defendant. Initially, Ms. Hayes resisted identifying the Defendant because she was angry at Mapco for firing her and she did not want to help them. Accordingly, she circled the Defendant's photograph and wrote, "This look[s] like the guy that robbed Mapco in March." She told Sgt. Grigsby that she was not positive about the identification. Ms. Hayes then considered that the man might have shot and killed her, leaving her one-year-old daughter motherless. Ms. Hayes then resolved to assist in the Defendant's apprehension and corrected her previous statement. She told Sgt. Grigsby that she was positive that the Defendant was the man who had committed the robbery and changed the writing on the photo array to read, "This is the guy that robbed Mapco in March. 100% sure." She reiterated at trial that she was positive that the Defendant had committed the crime.

Sgt. James Grigsby testified that he took over the investigation of this case in August 2003. At that time, he developed an address for the suspect at 2893 Epping Way. Sgt. Grigsby learned that the utilities to this address were in the name of "Johnson." Sgt. Grigsby then assumed that the "Chris" spoken of by Mr. Campbell and the "Johnson" with the utilities were the same person. Accordingly, Sgt. Grigsby generated a police photograph of a man bearing the name "Chris Johnson." Sgt. Grigsby showed this single photograph to Mr. Campbell and Mr. Campbell told Sgt. Grigsby that the man in the photograph "looked like" the man to whom he had given the ride, but he was not positive.

The photo of Chris Johnson shown to Mr. Campbell was admitted at trial. On it, Mr. Campbell had written "This is the guy I gave a ride to Mapco and Citgo." Sgt. Grigsby added in writing, "witness said he was not 100% positive on the ID." The photograph is of some person other than the Defendant.

After Sgt. Grigsby showed this photograph to Mr. Campbell, he called the residence on Epping Way. He spoke to a woman and asked if a man named "Chris" lived there. During this conversation, the Defendant's real name was "developed." Sgt. Grigsby then compiled a photographic array of six persons, including a photograph of the Defendant. The array did not include a photograph of Chris Johnson. Sgt. Grigsby then showed this array to Mr. Campbell. Sgt. Grigsby testified that Mr. Campbell "hit on" the Defendant's photograph immediately, and became very upset. The photo array shown to Mr. Campbell was also admitted at trial. On it, Mr. Campbell had circled the Defendant's photo and written, "This is the guy I took to the store in March to Mapco and Citgo." Mr. Campbell signed the array and dated it "8-30-03."

Sgt. Grigsby also met with Towanna Hayes. Sgt. Grigsby stated that Ms. Hayes was "not very eager to talk" with him. He prevailed upon her to view the photo array of six persons, which

contained a photograph of the Defendant. Ms. Hayes identified the Defendant and wrote on the array as previously described. The photo array on which Ms. Hayes wrote was admitted at trial.

Tawanda Lattin testified that she lived at the Raleigh Woods Apartments complex with her girlfriend Kim. She was familiar with David Campbell as a neighbor. She also knew the Defendant because he sometimes spent the night at Kim's apartment. Ms. Lattin knew the Defendant as "Sky." She also knew him from high school. She testified that she had seen him carrying a handgun around the apartment complex.

Ms. Lattin stated that she saw the Defendant leave with David Campbell in Mr. Campbell's vehicle on the day of the robbery. The Defendant was wearing a hooded shirt. Later that day, she saw Mr. Campbell sitting in his parked car at the complex. Mr. Campbell was crying. She spoke to him and he said something about "Chris," identifying him as the man who stayed at Kim's apartment. Ms. Lattin told him that she knew the man as "Sky." However, she had previously seen Sky's identification and knew his real name was Derek.

Several months later, Ms. Lattin spoke to the police. They asked her to review some photographs to see if she could identify the Defendant and she did so. She also showed the police the Defendant's mother's house.

Ms. Lattin reviewed the surveillance videotape at trial and identified the Defendant as the robber. She also identified the gun used in the robbery as the one she had previously seen carried by the Defendant.

R. K. Fuller of the Memphis Police Department testified that he gathered evidence at the crime scene. In the course of his work, he lifted three latent fingerprints. Two of these prints were taken from the cash register drawer; the other one was taken from the back door of the Mapco store. Nathan Gathright, a latent fingerprint examiner with the Memphis Police Department, testified that he examined these prints and could not determine if they had been made by the Defendant.

Based on this proof, the jury convicted the Defendant of one count of aggravated robbery by placing the victim in fear, and one count of aggravated robbery by violence. The trial court subsequently merged the two counts into a single conviction of aggravated robbery. The Defendant now contends that the evidence is not sufficient to support his conviction. He particularly targets the sufficiency of the proof identifying him as the perpetrator.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913,

914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Aggravated robbery is defined as the intentional or knowing theft of property from the person of another by violence or putting the person in fear accomplished with a deadly weapon. See Tenn. Code Ann. § 39-13-402(a). The Defendant does not contest the State's proof that a robbery was committed. Rather, he contends that the proof establishing him as the perpetrator of the robbery is insufficient. We disagree.

The victim testified that the Defendant was the man who robbed her. She stated that the Defendant got within two or three feet of her during the robbery. She was certain that the Defendant was the perpetrator. She explained that she had initially hesitated in her identification of the Defendant from the photo array because she was angry at Mapco for firing her and did not want to assist in the perpetrator's prosecution.

David Campbell testified that the Defendant was the man that he drove to the Mapco immediately prior to the robbery. After the Defendant returned to Mr. Campbell's car, and as they were returning to the apartment complex, the Defendant removed his hooded sweatshirt and a handgun fell on the floor. After he dropped the Defendant off, Mr. Campbell returned to the Mapco and learned that it had been robbed. Mr. Campbell informed the police that he thought his passenger had been the perpetrator. Mr. Campbell told the police that the man's name was "Chris."

When shown a photograph of a man named Chris Johnson, Mr. Campbell initially told Sgt. Grigsby that the man looked like the person he had driven to the Mapco, but told the officer that he was not sure about his identification. When Sgt. Grigsby returned with a full photo array containing the Defendant's photograph, Mr. Campbell immediately picked out the Defendant and was positive about his identification. Mr. Campbell also identified the Defendant at trial.

Towanda Lattin testified that she knew the Defendant and saw him get in Mr. Campbell's car on the day of the robbery. She reviewed the surveillance videotape of the robbery and identified the Defendant as the robber. The jury viewed the surveillance tape and was thereby able to compare the robber's appearance with the Defendant's.

Rather than finding insufficient evidence of the Defendant's identity as the perpetrator, we find instead a surfeit of such proof in this case. The jury had ample evidence from which to conclude beyond a reasonable doubt that the Defendant was the culprit. Accordingly, this issue is without merit.

The Defendant also challenges his sentence of nine years in the Department of Correction. The trial court sentenced the Defendant as a Range I, standard offender. Aggravated robbery is a Class B felony. See Tenn. Code Ann. § 39-13-402(b). The Range I sentence for a Class B felony is eight to twelve years. See id. § 40-35-112(a)(2). The trial court increased the Defendant's sentence from the eight year minimum to nine years based on the following enhancement factors: the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; the robbery involved more than one victim; the Defendant had no hesitation about committing a crime when the risk to human life was high; and the Defendant was on probation from a prior felony at the time he committed the robbery. See id. § 40-35-114(2), (4), (11), (14)(C). The trial court found no mitigating factors.

The Defendant complains that "in the absence of a valid waiver by the defendant it is constitutionally impermissible for a court to order enhanced punishment based upon facts not found by the jury," relying upon the United States Supreme Court opinion Blakely v. Washington, 124 S.Ct. 2531 (2004). The Blakely decision holds that the Sixth Amendment to the federal Constitution permits a defendant's sentence to be increased only if the enhancement factors relied upon by the judge are based on facts reflected in the jury verdict or admitted by the defendant. See id., 124 S.Ct. at 2537. The only basis upon which enhancement is otherwise permitted is the defendant's previous criminal history: where the defendant has prior convictions, the trial court may enhance the defendant's sentence without an admission or jury finding. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000); Blakely at 2536.

Subsequent to the Defendant's appeal of this case, our supreme court considered the impact of Blakely on Tennessee's sentencing scheme and concluded that the Criminal Sentencing Reform Act of 1989, pursuant to which the Defendant was sentenced, does not violate a defendant's Sixth Amendment rights. See State v. Edwin Gomez, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *22 (Tenn. 2005). Accordingly, the Defendant's argument on this basis has no merit.

We find, moreover, that even if Blakely applied to the Defendant's sentence, the trial court's application of enhancement factors in addition to the Defendant's prior criminal history was harmless beyond a reasonable doubt. The presentence report reflects one felony drug conviction, several misdemeanor drug convictions, two misdemeanor weapons convictions and one misdemeanor evading arrest conviction. The trial court enhanced the Defendant's sentence only one

year.  A one year increase in the minimum is appropriate based solely on the Defendant's criminal past.  The Defendant's claim that his sentence is excessive is therefore without merit.[1]

The evidence is sufficient to support the Defendant's conviction.  The Defendant's sentence is proper.  Accordingly, we affirm the judgment of the trial court.

 

_____
DAVID H. WELLES, JUDGE

---

[1]The  sole  challenge  to  the  Defendant's  sentence  is  based  upon  <u>Blakely</u>.  We  decline  to  address  the appropriateness  of  the  trial  court's  application  of  enhancement  factors  other  than  the  Defendant's  criminal  history, because  the  criminal  history  alone  is  sufficient  to  support  the  sentence  imposed.